Our first case this term is Case 12-872, Madigan v. Levin. Mr. Scudro. Mr. Chief Justice, and may it please the Court. Congress has crafted a comprehensive body of administrative and judicial procedures and remedies that are tailored specifically to combating discrimination against older workers. In extending these procedures and remedies to government employees, Congress did not intend to permit State and municipal workers alone to frustrate this regime or bypass it entirely using the more general remedies of Section 1983. Is this fair? Mr. Scudro, you said a preliminary question before we get to the question you presented, and that is, what authority did the Seventh Circuit have to deal with the question under the AIDS Discrimination Act? I mean, it was – it went to the Seventh Circuit on interlocutory review. That's correct. A qualified immunity question. Everybody agrees that there is no qualified immunity, that there is indeed a claim that the Equal Protection Clause includes age. So Seventh Circuit had no authority to deal with any question other than that, did it? It did, Your Honor. The Seventh Circuit properly followed this Court's holding in Wilkie. In footnote 4 of that opinion, the Court concluded correctly that whether or not there was a Bivens action for a recognized, in that case, due process violation, was itself part and parcel of the first prong of the qualified immunity inquiry, and therefore properly considered. But in Wilkie, the whole case was dismissed by the district court, wasn't it? So whatever was said in that footnote was dicta. Your Honor, there's an argument in one of the amicus briefs that the – there was an alternative route under 1254 in Wilkie, and therefore the argument is raised that it was dicta. But it wasn't dicta in context, Your Honor. The Court didn't consider that alternative route. The Court squarely held that it had jurisdiction and that the – and it goes on to say in the footnote that the appellate court properly exercised jurisdiction, because the question of whether there is or is not a Bivens action for this constitutional right is properly considered part of the QI. Alito, we have an amicus brief from law professors who argue that the Seventh Amendment does not have considered the question of whether there was a cause of action under Section 1983, but they also go on to argue that we nevertheless have jurisdiction to consider that question and that it is a matter of discretion for us to decide whether to do that. Is that – do you agree with that position? We do agree with that position. They cite Clinton v. Jones and they cite the Fitzgerald decision for that position, Your Honor, and we would agree that while those may be modest extensions of the holdings in those cases, we would agree that this Court can exercise 2254 jurisdiction over the question. Kennedy, if we adopt that formulation and that solution, is it as if we are granting certiorari before judgment on an issue in our own discretion? Is that the way it works? That's – I think that – no, I think the Court would still fairly consider the Seventh Circuit's judgment on the issue, Your Honor.  Kennedy, if we adopt that formulation and that solution, is it as if we are granting  Is that the way it works? Is that the way we can exercise jurisdiction where a court of appeals could not? Because we have authority to grant certiorari before judgment or for some other reason? The theory advanced in the amicus brief with which we confer is that 1254 grants the court jurisdiction over the case, and that would include issues like this that were part and parcel of the case before the appellate court. Now, I should note that that amicus brief begins with the false premise that there was an exercise of pendant appellate jurisdiction in this case. And as we explained briefly in our reply brief, the one reference, the sole reference to pendant appellate jurisdiction on page 7A of the Petitioner's Appendix is merely a reference or a brief description of the failed argument advanced by the Respondent that pendant jurisdiction would not be a proper proceeding here. And the Court did not advance. They squarely cited Wilkie and advanced along the pattern. Kagan But could I go back, Mr. Scodro, to the rationale of the you're relying on? I mean, you keep on saying part and parcel, but how is it part and parcel? That seems to elide the distinction between a right and a remedy. There's one question, whether there has been a violation of law. There's another question, whether a cause of action exists to remedy that violation. Why aren't those two separate inquiries? Scodro Well, Your Honor, the Court in Wilkie moved from one to the other in the footnote, and I think that while Kagan I guess I'm asking you to explain it to me, because that footnote is about a sentence long. So what's the theory as to why these are part and parcel of each other? Scodro Because a the Qualified Immunity Doctrine itself arises out of Section 1983 in Bivens. It would seem sensible as a matter of first principles to consider whether or not there is such a cause of action at all at the outset with the right to interlocutory appeal, rather than, given that qualified immunity is defensed from litigation and not just judgment, rather than waiting until final judgment and on a 1291 appeal then addressing for the first time on appeal. Kagan But that seems a different argument, not that the two really are intertwined with each other, but that it just might make sense to consider the one at the outset, even though, in fact, it's a separate inquiry. Scodro I think, and I want to be clear, I think there are two different rationales here. When discussing why it's Wilkie was correct in what it said in footnote 4, I would submit my most recent answer, namely, that it's part and parcel. It is not part and parcel, but it is natural and rational to consider whether or not the cause of action exists at the outset. With regard to Scalia If you are correct that the two are one and the same, how is it that we have authorized district courts to do the one or the other? We have not required district courts to reach the merits if they can resolve the question on the basis of qualified immunity alone. Well, how can that be, if the merits are necessarily part of the qualified immunity determination? Well, Your Honor, some of the merits we know are part of it under the Court's decision in Hartman, where the Court concluded that the absence or the failure to properly plead an element is indeed properly considered part of the qualified immunity inquiry. And here, the what Wilkie did essentially, as I read it, is essentially add to that line of cases the idea that the presence or not of the Bivens action in that case, but logically speaking, the Section 1983 action here, would be appropriately considered as part of the first prong of the traditional two-prong qualified immunity. Ginsburg You are running up against the Seventh Circuit in that respect, because the Seventh Circuit said in its remedy that that was irrelevant to the qualified immunity issue. Your Honor, toward the end of the Court's opinion, it's true. The Court uses the phrase that it's irrelevant to the qualified immunity inquiry. In that context, I would submit the Court is using the phrase qualified immunity, and I think this is clear in context, to refer, as lower courts have at times done, to the second prong, that is, the clearly established element of qualified immunity. Earlier in the opinion, in the section labeled jurisdiction, the Court actually cites Wilkie and makes clear that it's following Wilkie's command that the presence or not of the Section 1983 action for recognized constitutional right is considered part of the first prong. Alito If the existence of a cause of action could not be considered in an interlocutory qualified immunity appeal, what would the effect be on the defendant's right not to be tried, which is the whole reason for allowing an interlocutory appeal in qualified immunity cases? Wouldn't it be the case that if the district court found that there was no qualified immunity, then the case would have to be tried, and only at the end of the case could it be determined whether there actually was a cause of action, so you'd have a trial potentially about nothing? That's correct, Your Honor. In my early response to Justice Sotomayor's question, I think there were Justice Kagan's questions. I apologize. I think it was that that's exactly right. This is immunity from litigation, immunity from suit. The decision was that there was no qualified immunity, and the question is, having determined there was no qualified immunity, should they have stopped there? There wouldn't have been a trial. If there is no qualified immunity, then they have no exemptions from trial. No, Your Honor. To decide that there isn't qualified immunity, the Court needs to consider both prongs and resolve them both adverse to the defendant, and therefore, it was essential for the Court here to consider the argument that there is no Section 1983 action. I'm not sure you see the distinction or you're facing the distinction. The right not to be tried is one of qualified immunity. Correct. You can have a constitutional violation and still not have a remedy, which is what this question involves. So how do we deal with the concept that other people who have motions to dismiss that are denied still undergo trials, still experience the expense, and yet we've said repeatedly an interlocutory appeal is not warranted? And so what makes it warranted here, where a court has already said that there was a con or at least there's enough evidence to suggest a constitutional violation and that a reasonable officer wouldn't have believed his or a person would have believed his or her conduct was appropriate? Your Honor, with regard to that question, I would return to the notion that as a matter of first principles, given that qualified immunity is an outgrowth of Section 1983, the Court was very just was justified in Wilkie in treating the presence or not of the cause of action. This is a far we're not talking about an affirmative defense, for example, in the form of statute of limitations as one example. We're talking about the existence or not of the Bivens right, in that case, in the Section 1983 right here. It seems consistent with the fact that qualified immunity exists as a defense against Section 1983 and Bivens to contemplate the existence or not of that cause of the action right at the threshold. Maybe you better say a few words about the merits. Thank you, Your Honor. The ADEA's remedial regime has the two elements that this Court has looked at repeatedly in determining whether a comprehensive regime or a regime is sufficiently comprehensive to displace more general Section 1983. Ginsburg is another preliminary question, and that is, why are we talking about the ADEA when the district court held that the ADEA doesn't cover, Mr. Levin? And there seems to be not much of a dispute about that. You're not arguing that the ADEA does cover him, are you? Well, we are arguing that the ADEA's rights and remedies do apply to Mr. Levin. And the reason is that in 1991, with the amendments as part of the Civil Rights Overhaul Act of that year, the amendments in that act extended, and it's a section entitled Coverage of Previously Exempt State Employees, it extended ADEA rights and remedies to the previously exempt policymakers and other high levels. Has the Court ever held that an anti-discrimination statute that does not provide any rights for a particular class of plaintiffs nevertheless extinguishes the right of action that those plaintiffs would have under Section 1983? What if Mr. Levin were under 40 years old? Would you say that his equal protection, Section 1983, cause of action was extinguished by the ADEA? No, we would not, Your Honor. And the reason is that the ADEA does cover him, and it's a section entitled Coverage of Previously Exempt State Employees, it extends ADEA rights and remedies   by the ADEA? No, we would not, Your Honor. And the reason is that the ADEA does cover him, and it's a section entitled  to the previously exempt policymakers and other high levels of policymakers. Under 40s, is this Court held inclined that workers under the age of 40 simply were not part of the social ill that Congress aimed to redress? They were concerned with the plight of the relatively older worker. It's why the Court concluded inclined that reverse discrimination is not covered and also the explanation for why Congress drew a line at age 40. Just as in Smith, for example, the education of the Handicapped Act didn't extend to cover all manner of hurdles confronted by a disabled student. It focused solely on a single issue facing, a curricular issue facing these students. Undoubtedly, those students not covered by it would have retained their Section 1983 rights. Same with under 40 here. Now, as to the narrow exception that existed between 74 and 91 for high-level government policymakers, we have the EEOC's understanding of why exactly Congress did that. They did so because there was concern on the part of members of Congress that it would be inappropriate for a matter of federalism and operationally to have Federal involvement in the hiring decisions made by the highest members, the elected members of State and local government. And that concern applies equally to Section 1983 claims. Because that concern applies equally, we're not talking about people who weren't within the scope of the social ill. We're talking about a deliberate carve-out for reasons that apply equally to Section 1983, we would submit that the exception, likewise, would have had force during that interim period. Sotomayor, please. Alito, why should we consider that question? If this, if we were back in the era before the enactment of the GERA, yes, we would have to consider that question. But now that the new statute has been passed, why should we consider whether someone who was a non-employee lacked a 1983 cause of action during the period when that statute was enacted prior to the enactment of that statute? You're actually absolutely correct, Your Honor. As we say in our reply brief, there is no need for the Court to confront that question in this case. Which question? The question of whether or not between 1974 and 1991 exempt employees, those who then obtained ADEA rights in 91, whether those employees could be, their Section 1983  But I think the point here is that Mr. Levin is covered not by the ADEA, but by a separate statute, the GERA. And there's a separate question, whether the GERA would displace constitutional relief, which apparently is, has never been argued to anybody in this case. Two points, Your Honor. First, as we explain in reply and in our opening brief, the GERA is properly considered merely a part of the broader remedial regime under the ADEA. And we explain why to look at it otherwise would create all sort of a manner of artificialities. It's — it's — we know from past statutes like the Genetics Act that was passed more recently, the way in which Congress would incorporate GERA by reference instead of vice versa. We know that, for example, in that same 1991 Act, 1981a was added and provided punitive damages for a whole array of laws. Well, there are some similarities, many similarities, between the ADEA and the GERA, but there are also real differences. I mean, they're obvious — they obviously cover different people. There are different procedural prerequisites for the suit. You get a different kind of review. You only get administrative review under the GERA. So it's a separate inquiry as to whether this statute that has some commonalities but some differences displaces constitutional claims, and it's an inquiry that really has never been addressed in this case. And, Your Honor, to the extent, if the Court has concerns about addressing that, and again, I'm happy to go on as to why it would be artificial to consider the two separately, but if the Court were to conclude that rather than effectively amending the ADEA, that the GERA amendments in 1991 really created a whole new statute that needs to be considered independent, the proper remedy would not be to dismiss this appeal, but would be to vacate the Seventh Circuit's judgment, to permit Respondent to raise a claim that is new to this case on the merits here, namely that there are different rules for appointees than employees. Roberts, this is an inter — the qualified immunity question is presented on interlocutory appeal. It is, Your Honor. Decisions on the merits, factual and legal, are still pending. Now, we have a determination by the district court that Mr. Levin is not an employee. The prior district court determined that he was. The Respondents alleged that he was an employee in their complaint. I presume, depending upon how we rule on the qualified immunity issue, the parties may want to revisit their positions on that question as the case goes forward. And the district court in the first instance, I suppose, would be the one to decide whether they're allowed to revisit the issue in light of the change in his perception of the law or not. That's correct, Your Honor. If this — if I'm understanding your question, that if the — depending on how this court rules, it is always true under Rule 54 that he could seek to have the district court reconsider his status. It's also true that if he wished to proceed under the GERA process for vindicating ADEA rights, he has the option of seeking a dismissal without prejudice of his statutory claims. This has occurred in a handful of district court opinions. And then ask the EEOC if he can proceed in the first instance before an ALJ and to advance those claims. That is also an option that remains. Breyer. There are a few things I don't really know. I mean, does — do you have to allege a claim under GERA for this particular individual? I don't know. And if you do, I don't know whether GERA simply picked up whatever saving of the equal protection otherwise would have existed in the ADEA or didn't. And I believe that GERA applies to employment discrimination claims based on gender or race or other things, right? Well, every circuit in the country has said you don't lose your constitutional claim there. So are we supposed to read GERA, it goes this way in some cases and that way in other cases, when GERA is silent on the matter? And so I look to see what the Seventh Circuit said. Nothing. I look to see what you argued below. Nothing. I look to see whether it's obvious that GERA does apply or doesn't apply and simply picks it up or not. I don't know. Maybe I'm just being thick. But nonetheless, where I don't know so much and the whole case turns on it, why are we hearing an issue that might not even be in the case? Your Honor, the Seventh Circuit was pronounced a rule that was indifferent as between appointees and employees. The reason for that was the Seventh Circuit was asked to announce a rule that is indifferent as to employees and appointees. There was the Respondent sought and obtained a rule that the ADEA does not displace period. That's about people not like the client who's at issue here. That is about people whom the ADEA did cover. Isn't that an advisory opinion in respect to this case? I don't know. That has a certain ring to it. But what are we doing deciding whether the ADEA applies and in what way to a person to whom it doesn't apply, assuming that GERA is in fact a separate statute that you have to sue under, the answer to which I do not know and which has never been argued? Your Honor, there's very little lower court authority on the effect of GERA. I will say that what courts have done for the case, for example, in which the allegation was Title VII as amended in 1991, and the Court construed that naturally to include the GERA rights. So if there's so little about it, sometimes on occasion we dismiss a case as improvidently granted, which is not a particularly desirable thing to do. But how could we avoid doing that here? Your Honor, to reiterate a point made just a few moments ago, I think that the proper resolution, if the GERA and the ADEA, again, are really one remedial regime. And I've pointed out 1981a as an example of a similar regime where punitive damages were added to a number of statutes. And yet if we considered any one of those statutes today, we would agree that it includes punitive damages, even though it was added in a freestanding statute as part of the 1991 Act. But again, I would say as a procedural matter, should the Court harbor concerns about this issue and wish to permit the claim that appointees and employees are entitled to different displacement rules, and the counterargument that no, they're not, because GERA effectively amends and adds to the ADEA, the way to handle that procedurally would be to vacate the judgment below and to let the parties argue those points to that Court. As it stands, the Seventh Circuit was asked to issue a broad pronouncement that is indifferent to whether the Seventh Circuit was well aware and states that Mr. Levin was subject to an interlocutory determination that he was an appointee. And the Court went on, and the only relevance that had in the Court's analysis based on the way it was framed below is that, well, because appointees and people under 40 and other categories appear to be carved out, and we have answers to all of those in our briefs in response, but because all of them appear to be carved out, the ADEA does not displace ever as to appointees or employees. That doesn't contemplate a new argument that as an appointee, right, as an employee rather, Mr. Levin is subject to a different displacement rule. It would be for the Seventh Circuit to confront that in the first place. Sotomayor, I'm sorry. The only issue that's before us is whether someone who's exempted from the ADEA still has a 1983 claim, correct? That's what the Seventh Circuit said. If you're not a part of the statute, then you still have your 1983 rights? Your Honor, what the Seventh Circuit held is that the ADEA does not displace section 1983 claims for employees or appointees. It was a sweeping ruling that was sought, and the contention now is, well, perhaps the Court should not have reached such a sweeping ruling. Perhaps the Court could have ruled instead that as an appointee, Mr. Levin is entitled to a different rule that is specific to appointees because they're exempt under the ADEA. That argument was never advanced before the Seventh Circuit. And at this point, again, we would say should the Court harbor concerns about addressing this case, we would ask that they vacate and let the Seventh Circuit address that issue in the first instance.  Roberts. Thank you, counsel. Mr. Theobald. Mr. Chief Justice, and may it please the Court. I'd like to first address the jurisdictional issue. We made the argument before the Seventh Circuit that the Seventh Circuit did not have jurisdiction on this issue of preclusion. And we argued that under Swint, the Court's decision of Swint, on an interlocutory appeal of qualified immunity, the Court would have to reach the — in order to reach the issue of qualified immunity, it would have to address the preclusion issue. And our position was you don't have to look at — you don't even consider that on qualified immunity. It's not part of the equation. Well, we said the exact opposite in Wilkie, in footnote 4. I mean, you can say it's only a footnote, but it is what we said. Well, we respectfully disagree, Your Honor. And we made that argument. And in the decision that the Seventh Circuit reached, they said we didn't have to consider this preclusion issue to reach the qualified immunity denial, that qualified immunity was not applicable. So we did argue that, and that was our position there. With respect to the issue presented here, the only thing that is pertinent is whether or not the ADEA can preclude an individual who is not covered by it, regardless if that individual is under 40 years old or if they are exempt from the statute or if they have a claim that the ADEA doesn't address. Your brother, who just sat down, explained that the Seventh Circuit's ruling didn't consider the issue that you're talking about now. Well, I would respectfully disagree, Your Honor. We, the Seventh Circuit, we made it clear in the Seventh Circuit that Mr. Levin had been excluded. He was excluded in July of 2011 by a decision of district court Chang. He said that was not— Was that the first one or the second one? The second one. Judge Korr initially decided the issue twice and said Mr. Levin was covered. In your brief, could I just — you say, I think this is pretty close to the exact words, there's no realistic possibility of your obtaining a holding that Mr. Levin is an employee within the ADEA. But do you concede that now? I concede that there is no realistic possibility. Now, do you concede that he is not an employee? If you just say that there's no realistic possibility that the courts are going to take this correct position, then the issue is still in the case. So is it your position that he is an employee or he is not an employee? Well, I mean, they dodged, but he's — the Court has ruled the Seventh Circuit in Opp v. Cook County State's Attorney, Your Honor, made it very clear their State's attorneys would be appointees, would not be covered under the ADEA. Well, if you're not willing to say that he is not an employee, then the issue is still in the case, and we would have to — if we were to rule on the ADEA issue, wouldn't we have to decide whether there is a remedy for somebody who is an employee within the ADEA? Well, as a — The district court might be wrong on that, the Seventh Circuit might be wrong on that. You may be right, there's not much of a realistic possibility that you're going to get a reversal of that, but the issue is still in the case unless you want to give it up. Well, the Court will still rule the Seventh Circuit ruled in the Opp v. Cook County case, and this Court denied cert in 2011 on the Opp v. Cook County case. So you don't want to give it up, which makes sense. I mean, you've got a client. Depends on what we do, right? I mean, depending on what our ruling is, it may be advantageous to you to argue, as you alleged in your complaint, that he's an employee. Well, as we stand here now, he is not in this case, and I don't know. It's pretty universal he's not an employee under ADEA, though he might be under JIRA. You have to say yes or no, because if you're going to say — I mean, you know, let's either do it or not do it. So if you want to leave this issue in the case, it's possible to argue we should decide this whole issue on the ground that although he's not really a bird, he's a fish or whatever. But, I mean, that's — this is supposed to be fairly realistic, I think, what we're supposed to do. Yeah. Well, going back to Mr. Levin being not covered, we believe the Court's decision in Davis v. Passam and the Court's decision in Smith v. Robinson, which is the only case where the Court has precluded a 1983 constitutional claim. But that — Roberts Just to get this clear, you asked for this ruling from the Seventh Circuit, and you won based on a factual record that was no different then than it is now. You asked for this ruling based on these facts, you won, and now you want to insulate that from any review. I mean, I think it would be better in your cap if you can pull it off, but it seems to me — it seems to me that since you asked for the ruling on the merits and got it, we ought to be able to review it to determine whether it's right or wrong. And to the extent there's a factual issue that would persist in the case if it goes back on qualified immunity, you know, the parties can reposition themselves on that. I mean, it is an issue that was apparently close enough for one district court to say yes, the other district court, on looking at it again, to say no. The deck will be reshuffled depending on how we rule. And as I see you standing there, I don't see you willing to concede for the future that he's not an employee. Well, we think the difference was after the district court's decision in our case that the Seventh Circuit decided another case in 2010. And that's why the second district court judge followed that precedent. And that precedent where this Court was denied cert, there's no real possibility that any court is going to find Mr. Levin is being covered by the ADA. Breyer. The real possibility that any court is going to find that your client was, in fact, an employee without JIRA. That's what you said, is that right? JIRA is another. It's a different statute, but just without JIRA, he's a political appointment or whatever it is, so he's not within AEA. That's what I think this is about. That's correct. And you agree with that? Yes. Okay. Then thank you very much. And then my argument comes into play that we shouldn't be deciding issues of an advisory nature that do not involve individuals who fall within the statute that someone once interpreted. Do you also agree that he is covered by JIRA? It is unclear, Your Honor. We don't. JIRA, it's unclear whether, first of all, in the Alaska case versus EEOC, whether it applies to States. States have argued that they're not including it in the definition of JIRA. And the State of Illinois has not waived sovereign immunity under the JIRA statute. So whether or not there's a remedy there is very unclear. And this, as Justice Breyer mentioned, it's been never discussed in this case. It was never discussed in the Seventh Circuit, never discussed in the district court. It wasn't discussed at the EEOC. When we filed a charge, the Attorney General didn't come in and say this should be handled under JIRA. Well, it was never discussed because you never raised it. Isn't that right? Our position was that it was inapplicable. We didn't – we wouldn't raise it. It would be someone else who would raise it. There's about a handful of cases nationally that are filed under JIRA every year. Some years there's no cases filed at the EEOC. It's seldom used. Alitoson, you want us to hold that the Seventh Circuit lacked jurisdiction to consider whether there is a cause of action under Section 1983. So that precedent, that Seventh Circuit precedent would be wiped from the books. The issue would be back in the case. If ultimately there was another appeal, maybe it would go to a different Seventh Circuit panel, maybe it would come out differently. So you want that wiped away. And you want us to hold only – to limit our consideration to the ADEA and not consider JIRA, so that would be back in the case when it came – when it went back to the district court. So that's correct? That's what you want? Yes, Your Honor. In essence, our position is we didn't argue the jurisdictional issue in our brief, but the Court was concerned about it and we did address it in the Seventh Circuit. I would point out in the Seventh Circuit's decision, though, their decision throughout the, for instance, at the – the Seventh Circuit talks about Mr. Levin not being an appointee on the policymaking level and exempt, so that was in the case. It wasn't something where they just decided whether the ADEA precludes individuals that are covered. But as far as the preclusion is concerned, why does it make a difference whether it's ADEA or JIRA? Wouldn't the argument for preclusion be even stronger under JIRA, because they're a really special administrative remedy, have to go to the EEOC first, and the only forum for review is the Federal Circuit? That's correct, Your Honor. The – there's no preclusion under JIRA or the ADEA. We've set forth that the Court should look at preclusion with two questions. The first question on a preclusion is under C. Clammers. C. Clammers was a case where they passed a new statute with a new right and had an enforcement provision in the statute. And the issue is whether or not under C. Clammers the Congress intended to preclude 1983 to enforce that statute. And the Court came to the conclusion, yes, that it would be inconsistent to use 1983 with that statute. The second standard that the Court has used is under Smith v. Fitzgerald, which is applicable here. If we're looking at whether the ADEA precludes somebody covered by the ADEA. And that is, when a statute is passed with an enforcement provision, did Congress intend to use that enforcement provision to also enforce preexisting independent statutory or constitutional rights? And, two, did Congress intend to use that provision in the new statute to be used to be the sole exclusive remedy of the preexisting independent constitutional right? GERA cannot preclude a constitutional right. GERA would — there's no evidence that when Congress passed GERA, they intended GERA to enforce the constitutional right to equal protection of the law. It doesn't get to that. Alito, you're right. Do you agree that the standard for an equal protection age discrimination claim is traditional, full-blown, rational basis review? Yes, Your Honor. So that if there's any conceivable ground on which the decisionmaker could have decided that age was — it was proper to make an age classification, there's no constitutional violation? We could see where the rational basis test in the court found we survived summary judgment on our equal protection gender discrimination claim and the age discrimination claim. No, I'm just talking about equal protection age discrimination. Yes. And what if the Illinois legislature passed a statute that said, now, forget about the ADEA, there's no ADEA, there's no State anti-discrimination law involved here. All we're talking about is equal protection, and they passed a law that said all attorneys working for the State of Illinois must retire at the age of 60, because everybody knows, you know, once a lawyer passes 60, there's nothing left. We're all in trouble. Would that be — would that survive rational basis review? I don't believe so. This Court has considered that issue on two occasions. In Gregory v. Ashcroft, it was before the Court, it was a — the plaintiffs were excluded, like Mr. Levin, and yet this Court acknowledged the equal protection 1983 claim. They didn't — the reasons that were used in that case were insufficient to meet the rational basis test. Mr. Theobald, are there any cases out there in the universe of cases in which a person does not have an ADEA claim or a GERA claim, but has pressed a successful constitutional claim based on age discrimination? Well, GERA has never been — there's one case on GERA that we could find. It's over a 20-year-old district court, New York, decision that said GERA can't preclude anything. So we put GERA together with the ADEA. It's only been, really, one district court has addressed that issue. I guess the question is, what are the circumstances in which, given the very low standard or the — given — given the very low rational basis standard, what are the circumstances in which you would have a viable constitutional claim but not a statutory claim? What would that case look like? If you had a claim under 1983, it would also, I believe, violate the ADEA. If that's my answer, that's your question. Would there be any unfairness to the parties if this case were remanded to the court of appeals with instructions for it, in turn, to remand to the district court to see whether or not the GERA issue has been properly presented or waived, and to consider that? Would there be any unfairness to the parties in doing that? Very unfair to us, Your Honor. We were scheduled to go to trial in May before the court granted cert. The case has been pending almost 6 years, and to raise this issue at this — this issue in GERA was raised this year. It wasn't raised for 6 years, whenever it was part of this case. And I don't think it — Kennedy, that argument could be made in the district court. Well, for something that's a suspect, this Bureau, whether it even applies, it's — the State has not said that it applies to the State of Illinois. Breyer, is there anything unfair about this? I think Justice Ginsburg wrote an opinion in, I recall, a Third Circuit case involving ERISA or some medical thing, and an issue came up that was quite relevant, and nobody had really thought about it before or done much about it, and what she wrote, to my recollection, is, well, we'd like the advice of the lower court if they want to give it, and so we send it back for the Third Circuit to consider whether it's appropriate to reach the issue, and if it is appropriate to reach the issue, do so, or if they think the district court should reach it, do so. In other words, we can't figure it out at this moment what's fair in terms of the entire litigation. Now, would that be a serious problem for you or your client? Well, our position is that, yes, that none of these apply. ADA cannot preclude somebody that's covered. The Seventh Circuit opinion covers that. The ADA can't preclude somebody that's not covered. And this Court's opinion in Davis v. Passam and footnote 22 in Smith v. Robinson I don't know if you've satisfied my colleagues. I'm not sure that you've answered directly. I think your adversary is right that the Seventh Circuit held that no one's precluded from a 1983 claim, whether they're an employee or a non-employee. That's the way the case was litigated. That's the way they decided. Sotomayor's argument, a broad statement, whether he's an employee or not an employee, he doesn't have a 19 he has a 1983 action. You've come in and you've said he's not an employee, so he's entitled to his 1983 claim. Yes. All right. My colleagues are asking you, that only takes care of half of this problem, because the circuit said even if he was an employee, he would still have it. And so you're being asked, are you giving up that part of the claim, that he's not an employee? Yes, he's been excluded. I have no answer. Well, then I assume, if you're saying the qualified immunity ruling should not be reviewed because this person was not an employee, but instead covered by GERA, right? I don't agree that he's covered by GERA, but it's not clear. Well, I mean, they didn't address GERA in the preclusion ruling, right? So presumably, they get another, they get a chance in an interlocutory appeal. The whole thing is qualified immunity is supposed to protect them from trial. And if you say the GERA issue wasn't considered, even though the Seventh Circuit's ruling was sweeping and didn't distinguish, well, they should have a chance to assert qualified immunity under that ground, I would think. Well, I don't think that that would factor in, Your Honor, with the qualified immunity analysis. The Seventh Circuit held and the district court held that your decision in Kimmel and acknowledged equal protection in 1983 claims, and that's the issue in qualified immunity. They have not asked this Court to review the qualified immunity aspect of the Seventh Circuit's decision. Well, that's true. But is that the issue? Is that really the qualified immunity issue, whether irrational age discrimination violates equal protection, or is the qualified immunity issue whether on the facts here an official could believe that there was no constitutional violation, reasonably believe there was no constitutional violation? Is the latter, isn't the latter the real question? Yes, Your Honor. That's not what the district court held, though, is it? The district court did so hold, yes. Well, I thought the district court simply held that an official should have realized that irrational age discrimination was a violation of the Constitution, not that an official should have realized that it was a violation of the Constitution to do what was alleged to have been done here. I think it answered both questions, really. I don't see the difference. You don't see the difference between the two? No, Your Honor. I think the district court's decision held no qualified immunity. The Seventh Circuit cited this Court's decision in Kimmel. The other cases before this Court, Gregory v. Ashcroft, acknowledged an age discrimination case brought through 1983, and it was clearly established. The Seventh Circuit acknowledged the 1983 age discrimination equal protection claim in 1977 in Galt v. Garrison. This is a well-settled issue. If there's a qualified immunity appeal on the issue of whether, let's say, a search was an unreasonable search, would qualified immunity be denied on the ground that an official should realize that an unreasonable search is unconstitutional? Would that be the issue under qualified immunity? Well, if the facts that the officer was presented, if it wasn't well settled, that the conduct. On the facts that were presented? Yes, Your Honor. So, on the people that aren't covered, we have four groups. People that are under 40, under the ADA. People in the, that are exempt. Individuals that work for a government employer that have less than 20 employees are not covered by the ADA. And people that have a particular type of claim, a retaliation claim, a claim for emotional distress damage or something like that, they're not covered. The State concedes that the people under 40 are going to bring equal protection claims through 1983. There's no difference between those people and Mr. Levin and the other two categories. You're either in or you're out. Scalia, but that's not what the Seventh Circuit held. I mean, that may well be, but we're asked to review a holding by the Seventh Circuit that even if you are covered, even if you're not exempt, you still have a 1983 claim. That's why we took this case. And now you're telling us we should not review what the Seventh Circuit held. And that would presumably remain the circuit law, right? Yes, Your Honor. Well, not if there's no jurisdiction, right? If they didn't have jurisdiction, the thing would be wiped out. Yes, that is true. But I believe the Seventh Circuit in its opinion, and I could just refer to things in the appendix at page 57A, the district court's opinion, the district court said Mr. Levin is exempt. In the Seventh Circuit opinion, the Seventh Circuit docket, number 44, talks about end-runs. The Seventh Circuit docket, number 37, page 67, the plaintiff was an employee on the policymaking level. So it's clear that the Seventh Circuit knew, we argued, that he was exempt. We argued that the being exempt under this Court's decision in Fitzgerald gives an individual the right to bring an equal protection claim, and the Court mentioned that in Fitzgerald, the decision in 2009, being exempt from Title IX. Even though you have that reference to him being exempt, the Seventh Circuit basically said it didn't make a difference, right? Whether he was covered as an employee or not covered or covered under JIRA or anything else, under their analysis, it doesn't make a difference. I think we could read the opinion that way, but they certainly were aware that Mr. Levin was not covered. The State has argued since Mr. Levin has been excluded before the Seventh Circuit and before this Court, they use the terms ''exhaustion'', not ''exhausting remedies'', and they use the word ''avoids the scheme'', they avoids the ADA. In the opening brief before, the merits brief before this Court, the State used the term ''exhaustion'' or failure to exhaust more than a dozen times. They used the term ''avoiding the ADA'' at least six times. This argument is the old Zombro argument, the first case that held preclusion, where somebody didn't go through. ''Exhaustion'' has nothing to do with this case. This Court's opinion in Patsy v. Board of Regents said you don't have to exhaust for 1983. All the cases, Johnson v. Railway Express, CBOCS v. Humphreys, there's no ''exhaustion'' required, and, to top it off, Mr. Levin, he exhausted his remedies. He filed at the EEOC. He got a right to sue under Title VII. So let's assume that the question that was presented is before us, and you have argued Fitzgerald. The other side says Smith v. Robinson should control. So why shouldn't the Handicap Act decision control that, like the EEOC, and the other side says the ADA has a lot of procedural parts that wouldn't be included in an equal protection claim? We believe, Your Honor, that those two cases are the second standard. The Smith, we agree with the standard in Smith. We agree in the standard with Fitzgerald. And the standard in Smith, what that case was about was the Educational For All Handicapped Act, whether that act precluded the use of 504 of the Rehabilitation Act, the statutory claim, and whether it precluded 1983 constitutional claims. And the Court in Smith v. Fitzgerald said that it did, because there was no the EHA, the remedies and the procedures there was not for a de novo review in court. So the plaintiff's claim was precluded. We have no problem with the Smith standard. But the Court also said in Smith that if there are matters that are offered to the children, the disability of the disabled children or their parents under the EHA that that doesn't cover, those things, if they're offered to parents and if they're offered in a discriminatory manner or denied for discrimination, those claims can be brought under the 1983 equal protection claims or under Section 504 of the Rehabilitation Act, the pre-existing statutory claim. So replying that to the ADA, there is no evidence that in passing the ADA, recovered individuals that Congress intended to preclude the pre-existing 1983 equal protection claim. So our second standard in our brief is the Smith-Fitzgerald standard. In Fitzgerald, the Court went further and explained if the rights and protections of the statute that's seeking to be precluding are different than the equal protection claim, then there's no preclusion. And here, the rights and protections between the ADA and equal protection through 1983 are vast, are vast. There's different parties, the different defendants, and the ADA, the entities that defend it. In equal protection 1983, it's individuals. In the ADA, all these exemptions, the people that aren't covered, if somebody pursues a 1983 equal protection claim, there is no exemptions of individuals. So to conclude, Your Honor, we adopt the Smith standard. We have no problem with Smith. Counsel, I'm trying to see how many of these arguments that you've made before us about why we can't get to the holding of the Seventh Circuit, how many of them you made in your brief in opposition? I mean, we don't like to dismiss a case as improvidently granted and only when the case is before us, counsel suddenly finds all sorts of reasons why we shouldn't have taken it in the first place. You should have told us that when we took it in the first place. We could have done a better job, Your Honor, and I apologize for that. We did try to point out that Mr. Glynn was exempt. We did say that in Howe under Fitzgerald. The exemptions formed the basis of an equal protection claim. Scalia's I read your brief in opposition as going exclusively to what your unfortunate brother barely had a chance to argue, that is, the merits of the case. That's what your brief in opposition addressed. And here we end up spending most of our discussion on other stuff. I don't like to encourage that. We could have done a better job. Thank you, counsel. Mr. Scodro, you have 5 minutes remaining. Thank you, Mr. Chief Justice. Just a couple of quick points. Justice Kagan, in answer to your question to my colleague, I am not aware of any cases, nor can I conceive of one in which one would have an equal protection claim but could not state a cause of action under the ADEA, and I think this Court's decision in Kimmel makes clear that such a universe does not exist. The question, in response to a question from Justice Sotomayor regarding the scope of the Seventh Circuit's decision below, it proved positive that the Seventh Circuit was in fact announcing the sweeping rule that Respondents sought, is the fact that the Court departs openly from the law in other circuits. So it was, in fact, they were creating, they were knowingly creating the split. The only reference in the analysis portion of the case to the fact that there are exemptions for high-level officials appears on page 33A. Sotomayor, what the authority is for Congress to extinguish a right for a constitutional violation? Meaning, assume it's someone under the age of 40, someone who is not covered by any under 20, what would suggest to you in this statute that Congress intended to extinguish those people's rights? Sure, Your Honor. There are really two parts to my answer. The first is, they didn't. It's been overstated what has not, what has been exempted. Our position is that nobody whose Section 1983 claims are just, would be displaced would not in exchange receive the full rights and benefits under the ADEA. There is a reference to employees. I'm sorry, restate that. I didn't understand what you said. Of course. Nobody who, the universe of employees or workers, to use the neutral term here, the universe of workers who would not have a Section 1983 claim under the State's theory, that every member of that universe would have a right to bring a claim under the Equal Protection Clause. The under 40s, we agree, as we say in our brief, we agree that under 40, that was not the social ill that Congress was addressing in the Age Discrimination Act, consistent with this Court's holding in Klein. And therefore, those individuals retain their right. The small workplace, the under 20, the EEOC. Absent the GERA, would people who are executive officers, et cetera, absent the GERA, would they have retained a constitutional right? They would. We do not – we understand the displacement doctrine, and certainly as applied here, it would displace the 1983 remedies. We assume that courts retain their inherent authority to use equitable power to stop the ongoing violation of the Constitution. Kagan, you're in a situation where the question is not whether the remedial scheme displaces a 1983 suit brought for a violation of the same statute that contains the remedial scheme. Instead, you have to argue that this remedial scheme displaces a pre-existing statutory or constitutional right. And when we've had that situation in the past, we've looked to more than just the remedial scheme itself. You know, Smith looks to the language of the statute, which refers to constitutional claims. It looks to legislative history. It looks to the coincidence between the new statutory claim and the old constitutional claim. And it seems to me that you don't have any of those things. All you have is a complicated remedial scheme, which would be enough to say, look, you can't bring 1983 suits to vindicate this statute. But it seems as though it's not enough under our case law to repeal pre-existing rights and remedies. Your Honor, Smith can – as we understand Smith, and certainly as it's been read by Rancho Palos Verdes and Fitzgerald even, it stands for the proposition that the Lodestar inquiry, and I think the word primary emphasis or that phrase may be used in Fitzgerald, to describe the comprehensiveness of the regime as the first and most important inquiry. After that, Smith makes clear that we're allowed to consider, if there is a comprehensive regime, whether there's contrary evidence in the face of the legislative history, as there is, for example, for Title VII, not so for the ADEA. Ginsburg. But why would, if the ADEA is expanding the civil rights protection against AIDS discrimination, much more generous to the employee, isn't it strange to think that Congress at the same time wanted employees to have these expanded rights and to do away with the pre-existing remedy? No, Your Honor, not at all. When Congress provided the expanded right, they recognized that there were characteristics particular to AIDS discrimination that warranted very low damages awards and a procedural predicate that would emphasize swift and informal dispute resolution. Thank you, counsel. Thank you. The case is submitted.